BENJAMIN M. POLHILL, guardian, plaintiff in error, *vs.* JOHN NEAL *et al.*, defendants in error.

Where a bill was filed to marshal the assets of an insolvent estate, and among the debts due by the deceased was one due as guardian of his two daughters, both of whom were married at the death of the father, and the husband of one of the daughters was a party to the original bill, charged with wasting the assets to a large amount, and pending these proceedings, the two daughters, by their next friend, came in and were made parties, by petition, setting up the debt due them by their father, and praying that it should be settled to their sole use, and before any final decree, one of the daughters died, leaving minor children:

Polhill *vs.* Neal *et al.*

*Held,* That the right to a settlement was sufficiently asserted by the mother during her lifetime, to authorize the children to come in by petition and assert the right for their own benefit as survivors.

Equity. Survivorship. Parties. Before Judge KIDDOO. Mitchell Superior Court. May Term, 1873.

Allen Cochran died in November, 1863, leaving two daughters, to-wit: Medora Wade, wife of Ethel B. Wade, and Mary J. Polhill, wife of Frederick T. Polhill, both of whom were married prior to the death of their said father. The deceased left a plantation, slaves and personal property. The plantation and slaves were lost to the estate. A part of the personal property, to-wit: ninety bales of cotton, was sold by Frederick Polhill, thirty-seven bales of which were delivered to the purchasers and lost to the creditors, the balance being levied on by divers executions against the deceased.

Cochran, during his life, was the guardian of his said daughters, and was indebted to them, as such guardian, in about the sum of $7,000 00. John Neal, a judgment creditor, filed a creditor's bill against Frederick T. Polhill, M. D. Potts, administrator *de bonis non, cum testamento annexo,* of Cochran, and others, to condemn the cotton sold by Polhill, and other property sold by Cochran during his life, and generally to marshal the assets of the estate. Mrs. Wade and Mrs. Polhill were made parties to said bill, and, as creditors, set up their claim against the estate of their said father, averring that it was superior in dignity to all others. They prayed such decree in their favor as the law and principles of equity would justify, settling the amount recovered in trust for their sole and separate use respectively, and suggested their husbands as suitable trustees.

The administrator of Cochran answered these charges and set up, by way of cross-bill, the amount of the estate of the intestate which had been received and used by Polhill, Wade, their wives and children, which was far in excess of the aforesaid claims. He also charged that said indebtedness of the

deceased, as guardian, had vested in the husbands of his former wards.

Pending the issue thus formed, Mrs. Polhill died, and her children, through Benjamin M. Polhill, guardian *ad litem*, by supplemental bill, prayed to be made parties in place of their deceased mother. The Court refused the application, and said guardian excepted.

J. RUTHERFORD, by R. H. CLARK; A. D. HAMMOND, for plaintiff in error.

LYON & IRVIN; VASON & DAVIS, for defendants.

McCAY, Judge.

The only precise point of the objection made to the children of Mrs. Polhill becoming parties to this bill is, as we understand it, as follows: In the petition of Mrs. Polhill, filed during her lifetime, by her next friend, there is, 1st. No express statement that she claims her wife's equity. 2d. There is no allegation of the facts necessary to enable the Court to judge whether she ought to have any settlement, and how much. 3d. That she does not in that petition include her children. For these reasons it is said that, as she has not in her lifetime asserted any equity for her children, they are not now entitled, since they can only come in as survivors, to an assertion of right made by her for them during her lifetime: 6 Beavan, 344. We do not assent to the positions from which this inference is drawn. In the first place, this debt of Mr. Cochran to his daughters is a trust debt; the fund, too, out of which it can alone be paid is in the custody of a Court of chancery. The husband or his creditors, who seek to get it have come into equity to assert the marital rights of the husband. In such cases, a Court of equity will, without a petition, impose terms upon the husband, and will not lend him its aid until he himself offers to make a settlement, or affirmatively shows the wife's assent to his reduction of the equitable claim in action to his possession: 2 Vesey, Sr., 669,

Polhill *vs.* Neal *et al.*

672; Brown *vs.* Elton, 3 Peere W., 204; Blount *vs.* Bestland, 2 Vesey, Jr., 515. See also, Elliot *vs.* Cordell, 5 Madd. 156.

Again, Polhill, the husband, was already a party, and the very object of the bill in the stage of it when her petition was filed, was to dispose of the fund, and to off-set the trust claim of Mrs. Polhill, by a charge of Polhill's malfeasance, and thus get a decree in direct antagonism to Mrs. Polhill's equity. The insolvency of Polhill is the very basis of such a claim, and in making herself a party to the bill Mrs. Polhill need only make such statements, as to her rights, as do not clearly appear by the record. That her petition does not in terms call the rights she asserts, her equity to a settlement, does not, as we think, alter the case. The record shows that her rights, if she has any, is her wife's equity, and we hardly think equity proceedings require, when the facts appear, a complainant to designate the claim by any particular name, or to specify the principle of law under which the rights arises. Nor was it necessary for the childrens' rights that the mother should specially ask a settlement which would include them. The Court, in its decree, would include them whether she asked them or not: 1 Beavan, 593; 6 Simmons, 584; 1 Kean, 132.

Under sections 1710 and 1711, of the Code of 1863, the rights of the wife to a settlement of her claims in action, is very broadly asserted, both for herself and her children. It would seem from section 1710, that the wife need not even wait until the husband, or creditors, or assignees, attempt to reduce the claim into possession, but that she may apply indipendently. Section 1711, in distinct terms, provides for the childrens' right of survivorship, and we are not prepared to say, under these sections, that in this State the right of the children depends on the assertion of the wife during her life. This section does not put the right of the children on any such terms, but broadly declares, "If the husband be insolvent, the wife's equity survives to her children, if any."

We think, therefore, the children have a right to come into this litigation, as they, by their next friend, propose, and that, if their mother would have been entitled, under the rules of

equity, to a settlement for herself and them, that right still exists for them.

Judgment reversed.